[S. F. No. 6609.  In Bank.—April 19, 1916.]

## MANGRUM AND OTTER, INCORPORATED, Respondent, v. LAW UNION AND ROCK INSURANCE COMPANY (a Corporation), Appellant.

INSURANCE—CANCELLATION OF POLICY—RETURN OF UNEARNED PRE-
MIUM.—Under a provision in a fire insurance policy, reading, "This
policy shall be canceled at any time at the request of the insured; or
by the company by giving five days' notice of such cancellation.  If
this policy shall be canceled as hereinbefore provided, the premium
having been actually paid, the unearned portion shall be returned
on surrender of this policy or last renewal, this company retaining
the customary short rate; except that when this policy is canceled by
this company by giving notice it shall retain only the *pro rata*
premium," the return of the unearned portion of the premium paid
is not a condition precedent to a cancellation of the policy by the
insurer.

APPEAL from a judgment of the Superior Court of the
City and County of San Francisco, and from an order re-
fusing a new trial.  J. A. Plummer, Judge.

The facts are stated in the opinion of the court.

Goodfellow, Eells, Moore & Orrick, for Appellant.

J. F. Riley, for Respondent.

MELVIN, J.—Defendant appeals from an adverse judg-
ment, and from an order denying its motion for a new trial.

The suit was upon a policy of fire insurance.  On Febru-
ary 19, 1907, defendant issued the policy insuring plaintiff's
property for one year in the sum of two thousand dollars.
The premium, which was paid, was $120.  Shortly after
the issuance of the policy defendant, being dissatisfied with
the rate charged, demanded an additional payment of $20.
This demand was not complied with and on September 26,
1907, defendant sent plaintiff a letter with the statement that
if the sum of $20 was not paid as an additional consideration
for the policy by noon of October 3d, the contract would be
canceled, pursuant to a power conferred by the terms of the
instrument itself.  The provision in the policy under which

CLXXII Cal.—32

the defendant acted was as follows: ''This policy shall be canceled at any time at the request of the insured; or by the company by giving five days' notice of such cancellation. If this policy shall be canceled as hereinbefore provided, or become void or cease, the premium having been actually paid, the unearned portion shall be returned on surrender of this policy or last renewal, this company retaining the customary short rate; except that when this policy is canceled by this company by giving notice it shall retain only the *pro rata* premium.''

On October 4, 1907, defendant sent plaintiff a notice that the policy was canceled, null, and void, and that the insurer would admit no further liability under it. With this notice was a check drawn in favor of plaintiff for $31.30 which was tendered as the amount of the unearned premium. Soon thereafter this check was returned by one of plaintiff's officers who stated that the corporation which he represented had not theretofore received any demand for the additional payment of $20 and that $31.30 was not the correct return premium. On October 8th, defendant again sent to plaintiff the check for $31.30 which was again returned by plaintiff's representative with the objection that it was not drawn for the proper amount. The check was again sent to plaintiff but it was not presented for payment and was produced by plaintiff at the trial. Both parties to this suit concede that defendant should have proffered $45.07 instead of $31.30 as return premium. The property covered by the policy was destroyed by fire on December 26, 1907, and the judgment below was for the full amount of two thousand dollars specified in the contract.

Appellant contends that the giving of the five days' notice was sufficient to cancel the policy without the return or offer to return the unearned portion of the money previously paid on the execution of the contract, and we find this the only contention which we need discuss. This is a matter of first impression in California, so far as this court is concerned, but there is abundant record of adjudication in other jurisdictions, some courts holding that the return of the unearned part of the premium is one of the indispensable parts of the cancellation of such a policy, and others that the prescribed notice is all that is required to accomplish that result.

The policy used in the transactions between the plaintiff and the defendant is of the kind known as the ''New York

standard form," and the New York court of appeals has interpreted it to mean that cancellation of a policy by the insurer may only be accomplished by giving the prescribed notice and by restoring the unearned premium. The opinions of that distinguished court always command great respect, and when they deal with the law of the Empire state and the proper interpretation of a contract drawn under a sanction of that law, such opinions are clothed with peculiar authority; but we find that other courts of great dignity, including the United States circuit court for the southern division of New York, have held a different view of this contract or of policies not essentially differing from it, and that some of the learned judges of the New York court of appeals have dissented from the interpretation of the agreement given by the majority of their associates. Our own examination of the subject has impelled us to accept the doctrine of the courts that hold the return of the premium not an essential element of the annulment of the policy.

And first examining the language of the policy quoted above, without reference to decided cases, we cannot see that the repayment of a part of the premium is made an essential to the cancellation of the contract. The first sentence provides a complete scheme of cancellation by the assured or by the company: "This policy shall be canceled at any time at the request of the insured; or by the company by giving five days' notice of such cancellation." If the paragraph ended there, no question could be raised. But the contract goes further and properly provides for a return of a just proportion of the premium. The very opening words of that part of the policy so providing indicate that cancellation may precede repayment. "If this policy *shall be canceled as hereinbefore* provided . . . the unearned portion shall be returned *on surrender of this policy.*" If the return of the money is one of the necessary elements of the cancellation the last five words of the quotation are meaningless. Even upon the broad principle which authorizes the interpretation of a contract formulated by the insurer to be most favorable to the insured, we cannot convince ourselves that this plain, and to us unambiguous, language may be disregarded. The last proviso of the paragraph does not contradict the requirement that the return of the policy should be made before repayment of the proportionate share of the premium. It simply

provides a regular *pro rata* compensation for the period of
actual assurance when the contract has been terminated by
the insurer as contradistinguished from the higher "short
rate" which the insured must pay if he chooses to cancel
the agreement.   The history of this part of the New York
standard policy in the courts of New York is interesting.
In *Nitsch* v. *American Central Ins. Co.*, 152 N. Y. 635, [46
N. E. 1149], the New York court of appeals without handing
down an opinion affirmed a judgment against the defendant
insurance company.   In *Tisdell* v. *New Hampshire Fire Ins.
Co.*, 155 N. Y. 163, [40 L. R. A. 765, 49 N. E. 664], it was
determined by a divided court, upon the authority of the
Nitsch case, that cancellation of a policy to be effective must
be accomplished by a tender of the return premium as well
as by the giving of the prescribed notice.   The prevailing
opinion written by Judge Bartlett contains no argument re-
garding the basis of the rule.   The opinion is founded upon
the rule as settled by the previous decision.   A vigorous dis-
senting opinion was delivered by Chief Judge Parker.   In
it he pointed out the fact that the affirmance in the Nitsch
case did not rest alone upon the ground taken by the lower
court that a tender of the unearned premium must be made
as a part of the process of cancellation, but upon the broader
reason that the notice of cancellation sent out by the insur-
ance company was *subsequently waived*.   Discussing the
meaning of that portion of the contract which we have quoted,
he said, among other things: "The language is unambiguous.
It admits of no debate and requires no construction.   Words
more apt to accomplish the cancellation of a policy by the
giving of the five days' notice cannot well be imagined.   Hav-
ing provided for a cancellation of the policy, either by the
request of the insured or upon notice given by the company,
the next clause of the agreement proceeds to make disposition
of the unearned premiums, in the event of the exercise of
the option to cancel by either of the parties. . . . The policy
having been put an end to by cancellation, at the insistence
of one party or the other, then the situation of the parties is·
such that the company has in its possession certain premiums
which it has not earned, and which it does not desire to earn,
and the other party has in his possession the policy of in-
surance, no longer, of course, of use to him, and of no par-
ticular value to the company, except that when it finally

comes into the company's possession it of itself furnishes evi-
dence that the unearned premiums have been paid to the
insured.  With this situation, then, the agreement undertakes
to deal, and it provides that upon the surrender of the policy
the unearned premium, whether at short rate or *pro rata*
premium, depending upon which party brought about the
cancellation, shall be returned to the insured.  Practically, it
says to the insured: You return the policy to the place where
you got it from and the company will at once turn over the
unearned premium to which you are entitled under this con-
tract.  This agreement is so clearly expressed that there does
not seem to be opportunity for insisting that the language
means something quite different from what is suggested to the
mind upon the first reading.  And still other readings will not
prompt the thought that there is possibly any ambiguity.''

Later the court of appeals of New York affirmed the Nitsch
and Tisdell cases, but held (Judge Bartlett writing the pre-
vailing opinion from which two of his associates dissented)
that where the holder of the policy, in response to the notice of
cancellation, surrenders his contract he thereby waives his
right to a return of the unearned fraction of the premium
as a necessary part of the annulment of the policy.  Judge
Vann expressing the views of the dissenters said that he
could not see how a mere return of the policy by mail, in
response to a notice by which the insurer promised a return
of the premium ''when'' the policy should be surrendered
to said insurer, could possibly amount to a waiver of pay-
ment as a necessary part of the process of annulment.  We
have found the same difficulty in reconciling the doctrine of
that case—*Buckley* v. *Citizens' Ins. Co.*, 188 N. Y. 399, [13
L. R. A. (N. S.) 889, 81 N. E. 165]—with the two earlier
decisions of that court.  The United States circuit court for the
southern district of New York construing the same form of
contract in *Schwarzchild & Sulzberger Co.* v. *Phoenix Ins.
Co. of Hartford*, 115 Fed. 653-656, said:

''It was unnecessary for the defendant to return or tender
the unearned premium to accomplish a cancellation.  The
condition is carefully expressed to require the return of the
premium only upon the surrender of the policy by the in-
sured to the insurer.  (*Straker* v. *Phoenix Ins. Co.*, 101 Wis.
413, [77 N. W. 752]; *Norris* v. *Insurance Co.*, 55 S. C. 450,
[33 S. E. 566, 74 Am. St. Rep. 765].)  The decision of the

court of appeals of New York holding the contrary in respect to a similar condition is entitled to great consideration (*Tisdell* v. *New Hampshire Fire Ins. Co.,* 155 N. Y. 163, [49 N. E. 664, 40 L. R. A. 765]), but is not controlling upon this court; and the view of the minority of the court, expressed in the dissenting opinion, commends itself to me as presenting the better reasoning."

In Vance on Insurance, page 494, after quoting the portion of the New York standard policy which we have been discussing, the learned author uses the following language:

"The cancellation clause of the standard form of policy seems so clearly worded that one is surprised to see that disputes have arisen as to its construction. It is held by the better authority that, after the expiration of the five days' notice required in case the cancellation is by the company, the insurance is deemed to be terminated and inoperative, without further act on the part of the insurer, or any actual cancellation of the policy. . . .

"By the weight of authority, the repayment of the unearned premium is not, under the standard policy, a condition precedent to the termination of the insurance by the insurer. Such repayment becomes due only upon surrender of the policy. The New York Court of Appeals has, however, in a very unsatisfactory opinion, adopted the contrary rule."

Professor Richards, in his work on Insurance Law (section 288 of the third edition), while admitting that "by the current of authority" up to the date of his writing the duty is laid upon the insurer "when seeking cancellation under the standard policy, to accompany the notice of cancellation with payment or actual tender of the return premium in order to make the notice operative," makes this comment: "It is indeed difficult, however, to escape the conclusion of the dissenting judges in the New York Court of Appeals, voiced by the chief justice, that this is by interpretation to substitute a new contract in place of unambiguous terms adopted by the legislature."

We feel impelled, however, to follow that which seems to us the meaning expressed by the unambiguous language of the contract rather than even the "current of authority" which would substitute a judicially manufactured agreement for the one made by the contracting parties. In addition to the authorities which we have noted above in support of the

view which we take of the meaning of the quoted portion of the standard policy of New York, we wish to cite, *Straker* v. *Phoenix Ins. Co.*, 101 Wis. 413, [77 N. W. 752–755]; *Webb* v. *Granite State Fire Ins. Co.*, 164 Mich 139–142, [129 N. W. 19]; *Davidson* v. *German Ins. Co.*, 74 N. J. L. 487, [12 Ann. Cas. 1065, 13 L. R. A. (N. S.) 884, 65 Atl. 996]; *El Paso Reduction Co.* v. *Hartford Fire Ins. Co.*, 121 Fed. 937; *Schwarzschild & Sulzberger Co.* v. *Phoenix Ins. Co.*, 124 Fed. 52, 53, [59 C. C. A. 572]; *Insurance Co.* v. *Brecheisen*, 50 Ohio St. 542–548, [35 N. E. 53]; *Parsons & Arbaugh* v. *Northwestern National Ins. Co.*, 133 Iowa, 532, [110 N. W. 907]; *Newark Fire Ins. Co.* v. *Sammons*, 11 Ill. App. 230–235.

Among the cases which announce the other doctrine—that cancellation does not precede payment—are *Peoria M. & F. Ins. Co.* v. *Botto*, 47 Ill. 516–519; *Hartford Fire Ins. Co.* v. *McKenzie*, 70 Ill. App. 615–618; *Peterson* v. *Hartford F. I. Co.*, 87 Ill. App. 567–572; *Kinney* v. *Rochester German Ins. Co.*, 141 Ill. App. 543–549; *Kinney* v. *Buffalo German Ins. Co.*, 148 Ill. App. 260; *Kinney* v. *Caledonian Ins. Co.*, 148 Ill. App. 256; *Continental Ins. Co.* v. *Daniel* (Ky.), 78 S. W. 866; *Chrisman* v. *Hartford Fire Ins. Co.*, 75 Mo. App. 310–315; *Taylor* v. *Insurance Co. of North America*, 25 Okl. 92–94, [138 Am. St. Rep. 906, 105 Pac. 354]; *Hartford F. I. Co.* v. *Cameron*, 18 Tex. Civ. 237, [45 S. W. 158]; *Polemanakos* v. *Austin Fire Ins. Co.* (Tex. Civ. App.), 160 S. W. 1134; *Niagara Fire Ins. Co.* v. *Mitchell* (Tex. Civ. App.), 164 S. W. 919.

In spite of this array of decisions in opposition to our views, we are convinced that our reading of the policy is the correct one.

Because of our interpretation of the contract of insurance, it is not necessary for us to review the interesting questions discussed in the briefs touching the sufficiency or insufficiency of the tender, made by the insurer, of an amount mistakenly supposed to be the proper return premium.

The judgment and order are reversed.

Henshaw, J., Shaw, J., Sloss, J., and Lorigan, J., concurred.

Rehearing denied.